OPINION
{¶ 1} Defendant, Robert Baccus, was found guilty of carrying concealed weapons following his no contest plea, which he entered after the trial court overruled, in part, Defendant's motion to suppress physical evidence and Defendant's statements to police. The trial court sentenced Defendant to five years of community control sanctions.
 {¶ 2} Defendant timely appealed to this court from his conviction and sentence. Defendant's appellate counsel filed an Anders brief, Anders v. California (1967), 386 U.S. 738, stating that he could find no meritorious issues for appellate review. We notified Defendant of his appellate counsel's representations and afforded him ample time to file a pro se brief. None has been received. This matter is now ready for decision on the merits.
 {¶ 3} Defendant's appellate counsel has identified two potential issues for appeal.
FIRST ASSIGNMENT OF ERROR
 {¶ 4} "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS THE SEARCH OF THE VEHICLE."
 {¶ 5} When considering a motion to suppress, the trial court assumes the role of the trier of fact and, as such, is in the best position to resolve conflicts in the evidence and determine the credibility of the witnesses and the weight to be given to their testimony. State v. Retherford (1994),93 Ohio App.3d 586. The court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. Id. Accepting those facts as true, the appellate court must then independently determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. Id.
 {¶ 6} The facts found by the trial court and set forth in its decision overruling in part and sustaining in part Defendant's motion to suppress, are as follows:
 "I. FACTS {¶ 7} "On October 15, 2004, at approximately 10:00 p.m., two Dayton Police Officers Timothy Gould and his partner were in uniform and a marked cruiser when they observed a Ford Expedition drive over a curb and grass to get around an area which was clearly marked as a closed portion of the roadway.
 "A. STOP AND DETENTION {¶ 8} "The cruiser pulled behind the vehicle and turned on its emergency lights and beeped the siren several times. The SUV initially pulled to the side, but then accelerated. The officers continued to follow the vehicle with their emergency and take-down lights on and, despite dark window tint, were able to notice approximately four individuals moving around in the vehicle. The vehicle again slowed down, but then accelerated. The vehicle turned left onto a side street and continued for about 150 feet, at which point it came to a stop.
 {¶ 9} "The officers yelled five times for the front seat driver and passenger to come out of the car and walk back to the cruiser, before their instructions were followed. The driver and front seat passenger were patted down and placed in the rear seat of the cruiser.
 {¶ 10} "The officers instructed the two rear seat passengers (including Mr. Baccus) to get out of the car, at which point they were patted down and told to stand behind the SUV and in front of the cruiser. One of the officers went back to check in the vehicle for weapons and found a gun in the console portion of the back seat.
 {¶ 11} "The two back seat passengers were then handcuffed and told to sit on the curb between the vehicles while the officers radioed for another car.
 "B. STATEMENT TO OFFICER GROSS {¶ 12} "In response to a call for backup, Officer Otis Gross arrived in a marked cruiser and in uniform. The two back seat passengers were put into his vehicle. Mr. Baccus asked Officer Gross, `What's going on?' The officer responded that a weapon was found and was being investigated; further, that an evidence technician was on the way to take fingerprints off of the weapon. The officer went on to say something to the effect of, `If whose ever gun that was would simply be forthright and do the right thing and admit ownership, it would go a whole lot easier.' The defendant allegedly responded that the gun belonged to him.
 "C. THE STATEMENT TO OFFICER GOULD {¶ 13} "Officer Gross got out of his cruiser and reported to Officer Gould that the defendant had acknowledged responsibility. The other passenger was removed from the back of Gross's car and Gould sat in the front. Gould read the defendant his Miranda rights, and the defendant acknowledged understanding his rights and that he was willing to waive them, and made a statement.
 "D. STATEMENT TO DETECTIVES MILLER AND MARTINEZ {¶ 14} "The defendant was transported to the Safety Building and placed in an interview room. Detectives Alan Miller and Elizabeth Martinez went over the rights form with the defendant. The defendant acknowledged that he understood the rights, wished to waive them, signed his name, and made a statement to the detectives."
 {¶ 15} Initially we note that at no time during the trial court's proceedings, including before or during the hearing on the motion to suppress evidence, was any question raised about whether Defendant, a passenger in this vehicle, has standing to object to a search of the vehicle. Nevertheless, it appears that Defendant does have standing to the extent that he asserted an interest in the gun that was seized by police. See Rakas v.Illinois (1978), 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387;State v. Carter, 69 Ohio St.3d 57, 1994-Ohio-343; In Matter ofBruce S. (March 29, 1996), Sandusky App. No. S-95-019.
 {¶ 16} Defendant does not challenge the legality of the initial stop of the vehicle based upon an observed traffic violation, driving on a portion of the roadway that was closed.Whren v. United States (1996), 517 U.S. 806, 116 S.Ct. 1769,135 L.Ed.2d 89; Dayton v. Erickson, 76 Ohio St.3d 3,1996-Ohio-431. What Defendant does suggest is that police lacked sufficient specific, articulable facts to support a reasonable belief that the occupants of the vehicle might be armed and dangerous and might gain immediate control over weapons hidden inside the vehicle, which would justify a search of the interior of the vehicle for weapons.
 {¶ 17} Under Terry v. Ohio (1968), 392 U.S. 1,88 S.Ct. 1868, 20 L.Ed.2d 889, an officer is entitled to conduct a limited patdown search of a suspect for weapons if the officer reasonably believes that the suspect might be armed and poses a danger to the safety of the officer or others. Id. The issue is whether a reasonably prudent man in those circumstances would be warranted in the belief that his safety or the safety of others was in danger. Id. Moreover, a protective search for weapons is not always limited to the suspect's person, but may in some circumstances include areas surrounding the suspect, such as the passenger compartment of an automobile where weapons may be hidden. The search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officer in believing that the suspect is dangerous and might gain immediate control over weapons.Michigan v. Long (1983), 463 U.S. 1032, 103 S.Ct. 3469,77 L.Ed.2d 1201.
 {¶ 18} After police initiated this traffic stop, on two separate occasions the vehicle pulled over as if it was going to stop, but then suddenly accelerated and continued on, traveling northbound on Philadelphia Drive. Officer Gould could see the four occupants moving around inside the vehicle, but he could not see what they were doing because of the dark window tint. Gould testified that caused him to be concerned for his safety. After the vehicle finally came to a stop, the occupants had to be told five times by police to exit the vehicle before they finally complied. Officer Gould testified that he decided to search the vehicle for weapons before letting any of the occupants return to the vehicle.
 {¶ 19} The totality of these facts created the necessary reasonable suspicion that the occupants might be armed and concealing weapons inside the vehicle, and therefore that the occupants of the vehicle posed a danger to the officers. Officer Gould's safety concerns were reasonable and supported by specific and articulable facts.
 {¶ 20} In matters involving traffic stops we have previously observed that given the real hazards to which police officers are regularly exposed, we believe courts must be cautious in second-guessing an experienced police officer who has concluded, based upon the overall situation and suspicious movements, that a weapon may be in play. State v. Miller (August 29, 1997), Montgomery App. No. 16174. The protective search of the passenger compartment of this vehicle for weapons was reasonable under the Fourth Amendment. There is no arguable merit in this assignment of error.
SECOND ASSIGNMENT OF ERROR
 {¶ 21} "THE TRIAL COURT ERRED IN OVERRULING THE APPELLANT'S MOTION TO SUPPRESS THE STATEMENTS MADE TO OFFICER GOULD AND DETECTIVES MILLER AND MARTINEZ."
 {¶ 22} After Officer Gould discovered a loaded .40 caliber semiautomatic handgun concealed in the rear seat armrest of the vehicle, the two rear passengers, which included Defendant, were handcuffed and placed in the rear of Officer Gross' cruiser after he arrived on the scene. While seated in Officer Gross' cruiser, Defendant asked Officer Gross what was going on. Gross replied that police found a gun in the vehicle and that an evidence technician was coming to check for fingerprints on the gun. Officer Gross further commented that if whoever the gun belonged to would merely be forthright and honest, it would make things a lot easier. Immediately after that statement Defendant admitted that the gun belonged to him. Officer Gross then informed Officer Gould that Defendant had admitted the gun was his.
 {¶ 23} Officer Gould then questioned Defendant after first advising him of his Miranda rights. Defendant indicated that he understood his rights and would waive them and speak with police. Defendant then gave a statement to Officer Gould, admitting that the gun belonged to him. Defendant was then arrested for carrying concealed weapons.
 {¶ 24} After Defendant was transported downtown he was interviewed by Detectives Miller and Martinez. Detective Martinez first advised Defendant of his Miranda rights. Defendant once again indicated that he understood his rights and was willing to waive them and talk to police. Defendant then gave a statement to Detectives Miller and Martinez, admitting he owned the gun discovered in the vehicle.
 {¶ 25} Pursuant to Defendant's motion, the trial court suppressed Defendant's first statement to Officer Gross because, while in custody and without first being given Miranda warnings, Defendant was subjected to interrogation, either questioning or words or actions on the part of the police that they should know are reasonably likely to elicit an incriminating response from the suspect. Rhode Island v. Innis (1980), 446 U.S. 291,100 S.Ct. 1682, 64 L.Ed.2d 297; Miranda v. Arizona (1966),384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. The trial court refused, however, to suppress Defendant's subsequent statements to Officer Gould and to Detectives Miller and Martinez because those statements were voluntary and preceded by Miranda warnings. Defendant now argues that his statements to Officer Gould and the detectives should have also been suppressed because they were fatally tainted by the unwarned statement to Officer Gross.
 {¶ 26} A failure to administer Miranda warnings before obtaining an otherwise voluntary inculpatory statement does not fatally taint any subsequent statements that are preceded by Miranda warnings and a suspect's valid waiver of those rights, provided the subsequent statements are voluntarily made. Oregonv. Elstad (1985), 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222;In the matter of W.J.L., Jr. (July 16, 2004), Clark App. No. 2003 CA 81, 2004-Ohio-3787.
 {¶ 27} Although only a brief period of time elapsed between Defendant's initial unwarned statement to Officer Gross and the subsequent statements he made to Officer Gould at the scene and to Detectives Miller and Martinez at the police station, these later statements were nevertheless made only after a careful admonition of Miranda rights and a valid waiver of those rights. Moreover, it is clear from this record that Defendant's initial statement, as well as his subsequent statements, were all voluntary. There is no evidence whatsoever in this record of physical violence, coercion, deprivation or inducement of any kind. Absent coercion in obtaining an unwarned statement, a careful and thorough administration of Miranda warnings cures the condition that renders the unwarned statement inadmissible. That is what happened here. The trial court correctly refused to suppress Defendant's statements to Officer Gould and to Detectives Miller and Martinez because those statements were voluntarily given and preceded by a valid waiver of Miranda rights.
 {¶ 28} We further note that the situation surrounding the giving of Defendant's statements is clearly distinguishable from the circumstances present in Missouri v. Seibert (2004),542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643. In that case, during one nearly continuous interrogation, police deliberately employed a "question first, warn later" strategy, effectively dividing the interrogation into two parts. First, police questioned Defendant until they obtained a confession, deliberately withholding Miranda warnings. After a brief break, the same officer then advised defendant of her Miranda rights, obtained a signed waiver, and then continued questioning defendant, confronting her with her pre-warning statements until defendant repeated her earlier confession. Under those circumstances, the Supreme Court upheld the suppression of the second confession because giving the Miranda warnings midway through the interrogation session, after a confession, was ineffective to fulfill their purpose. That is clearly not the situation here. Defendant was subjected to separate interrogations by different officers in different places, and there was no planned and deliberate effort by the police to first obtain an unwarned confession from Defendant and then have Defendant waive his rights and confess again, the purpose being to obtain a confession that Defendant would not otherwise make if he understood his rights at the outset. There is no arguable merit in this assignment of error.
 {¶ 29} In addition to reviewing the arguable issues raised by Defendant's appellate counsel, we have conducted an independent review of the trial court's proceedings and have found no error having arguable merit. Accordingly, Defendant's appeal is without merit and the judgment of the trial court will be affirmed.
Brogan, J. And Donovan, J., concur.